United States Court of Appeals for the First Circuit is now in session. All persons having any business before this honorable court may draw near, give their attendance, and they shall be heard. God save the United States of America and this honorable court. Please be seated. Court is in session. Good morning to all. Let's call the first case. Today's cases will be called as previously announced. Times will be as allotted to counsel. The first case today is number 23-1266, Ana Luisa Donis-Hernandez de Cabrera et al. versus Merrick B. Garland. At this time, would counsel for the petitioners please come to the podium and introduce themselves on the record to begin. And before that, let me welcome Judge Selya, who is appearing remotely. Good morning. Good morning, Judge. Please proceed. Good morning, Your Honor. May I have two minutes for rebuttal? You may. Thank you. May it please the Court, Robert Weber on behalf of the petitioners in this matter. This is a petition for review of the February 27, 2023 decision of the Board of Immigration Appeals, which adopted and affirmed the immigration court's denial of the petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture. The petitioner's claims were based on death threats that petitioner Ana Luisa Donis-Hernandez received after a cellular phone was thrown through the window of her home. And that phone received a phone call where she was threatened with death of her husband and their daughter if she did not pay 10,000 quetzales to the individual on the other end of the phone, who she believed to be the Mar-18 gang, within one week. Counsel, do you acknowledge that the particular social group that you argued before the immigration judge is different from the group that you argued before the BIA? Your Honor, yes. There were two different characterizations of the social group. I would say that the BIA in its decision characterized the social group as small business owners, so I think that the petitioner in this court should consider that as the particular social group, because the agency itself considered that to be the particular social group. But you didn't acknowledge that fact in your briefing that it had changed. You're saying that the agency suggested that that was the group, but isn't it the fact that you changed the grouping, or the petitioner changed the grouping? No, I believe that the petitioner did change the grouping. However, the agency did characterize the group, and it was mentioned in a footnote at the BIA that they characterized the group as small business owners. So I think that this court and the petitioner is free to use that as the social group for purposes of this appeal. But right now, what exactly are you telling us is the social group? Small business owners? Small business owners in Guatemala. Okay, and if that is your group, what is the immutable characteristic for that particular group? The immutable characteristic, Your Honor, I believe is the fact that they are small business owners, entrepreneurial spirit. I believe that they, one, should not be required to change that. I think that if you start to allow gangs or governments or groups that governments can't control to start to force people out of their small businesses to work for corporations or governments, then I think you can really harm a society that way. I think that the gangs in this case have a real interest in the government in keeping small business owners out of their communities. Well, on that side of the thinking, what characteristic would not be immutable? You could say that about any change that the petitioner made. Any characteristic would therefore become immutable, and the requirement would become a nullity. Well, I think that if you had, I mean if we're talking about any requirement that could be immutable, you could get down to real small things like what people's favorite colors are, I suppose. I'm not trying to make fun of the question, but I think that this is an important thing. If someone wants to go out, if they find that conditions in their country that they don't want to work for a certain employer or they don't want to work for the government, I think that they should be free to start their own business. I mean that's kind of the core of our country. But Congress and the agency have spoken of an immutable characteristic, not an important characteristic. Well, it's immutable if there's... I'm still struggling with how you would define immutable and still say it's all right to switch from one level to another. Well, I'm not sure I understand the question, but I'm saying it's not... In other words, she could change that characteristic. There's a difference between whether she should change the characteristic, but nonetheless, she can change the characteristic. In fact, she was only a small business owner for a limited period of time. Well, the agency in MEBG states that not only would it be an immutable characteristic and not only something that would be virtually impossible to change, but it's something that they should not have to change because the affiliation, being small business owners, is so fundamental to her identity that she shouldn't be forced to change. And I think that's what we're dealing with here. It's not that she couldn't change. I mean we can all acknowledge the fact that, yes, she could just shut her business down and go work somewhere else. Well, how are we to determine if it's fundamental to her identity? Is that a factual dispute that the IJ should have determined? Yes, I believe it is. I believe that the facts in this case, I think that we can infer that it was fundamental to her identity just by her testimony that she knew that the gangs targeted small business owners in her area, yet she still decided... Well, no, because at the stage in the immigration court, the social group was characterized as small business owners within, I believe, San Gaspar, Guatemala, who were subject to harm by the criminal gangs. So I think that with that, and given this court's decision in Espinosa, Ochoa, that the IJ should have eliminated the harm from the social group, and then at that point we have small business owners in San Gaspar, Guatemala, which I think is exactly what we're dealing with here. And again, the board of immigration appeals, without the additional comment that the petitioner had in the brief in this case, characterized the social group as small business owners. I'm struggling with the notion of how it can be a fundamental characteristic when it wasn't a characteristic for most of her life. Correct. I think, well, I think someone can make a change in their life as far as what they believe is a fundamental characteristic to them. And as I said, I do think that... So does it become fundamental the minute she goes into business? I think it becomes fundamental the minute that she decides that despite the possibility of facing harm, as other small business owners had, she decides to take this step and become a small business owner anyway, in the face of that danger. Is anything on the record to that effect, that she did this in spite of the threat? Well, at the immigration court she did testify that she had knowledge that other small business owners were harmed by the gangs. So yes, she did state that before the immigration court. Now, whether or not she said in the... She didn't actually say, despite that I've decided to do this, but that her actions show that despite the fact that she had knowledge of that potential harm or the harm that other people had, other small business owners had faced, she decided to do that anyway. And she may have decided to do it in a way to kind of keep her business out of the gangs' view, but I think that, again, that's something that it was her choice and I think it became fundamental to her over the time. I think that when someone makes a choice like that, I don't think it's an easy choice, given the fact that she knew people who had been killed in that same situation, yet she stepped into that situation herself. So I do believe that it becomes fundamental at that point. Let me ask you, you mentioned earlier in your argument that core of our country was that individuals are, you know, they can start their own businesses, but is that also a core in Guatemala? Because obviously it's a different country. Was that protected under Guatemalan law or the Constitution or something that could give you perhaps an edge? No, I don't think that it's protected under the Guatemalan Constitution. However, I think that just in society as a whole, if we're talking about democratic society and people not being subject to persecution by gangs or government actors, then I think you have to have a small business community, because otherwise everyone just has to work for the big corporation or the government and they're just stuck in that cycle and they'll never get out of it and the country will never change and the country will remain the same. What if instead of, like, throwing the gang through or trying to scare your client out of business, this gang, instead of doing what it did, was looting the store every other week? Would that be a different case or it's still the same scenario? Yeah, I think that that's a different case. I think that's just generalized crime. I think that when you threaten someone with such a large extortion demand, I don't think it's a situation where they're going after her for her perceived wealth, because in that case, why not go after the husband who owned the property? They're going after her because of her small business. They're trying to either, one, put her out of business via the threat or put her out of the business via the demand. If she pays the demand, if she continues to pay the demand, how does she have money to run her business or survive? So I think that the end goal was to put her out of business and that's how they did this. Okay, thank you. You have two minutes later for rebuttal. One more question. I'll save it for rebuttal. Okay, thank you. Let's hear, then, from Counsel Sheffield. And please identify yourself. Please identify yourself. Good morning, and may it please the Court. Fred Sheffield on behalf of the respondent. Your Honors, we're asking that you deny the petition for review in this case because the record simply supports the agency's decision that petitioners neither qualify for asylum nor protection under the CAT. The facts in this case are fairly straightforward, and they do resemble a lot of other matters that have come before this Court. And while it certainly may be understandable that the petitioners became frightened when they became the victims of a criminal extortion attempt in their country, the case law makes it very clear that these facts do not support a claim for asylum or CAT protection. I want to address some of the issues regarding the particular social group that Judge Thompson raised. Our position is that the particular social group that we should be looking at here is the one that was presented before the immigration judge. That's based on a board case called Matter of W.Y.C. and H.O.V., which makes it very clear that for purposes of an asylum claim, the burden is on the petitioners to formulate that particular social group and present it to the agency. Certainly it's true that we see a board decision which references small business owners as a particular social group rather than the more lengthy particular social group proffered by petitioners. The board doesn't make clear why they make that choice. I would submit that the reason they do so is because what petitioners are really offering as a particular social group is small business owners who have had something happen to them. So they're arguing that they are a subset of a larger group of small business owners. And the board really rightly pointed out with the case law it's cited to that even had petitioners restricted their particular social group to small business owners, that wouldn't square with either the case law of the Board of Immigration Appeals or this court. Well, should we understand what the board said as their understanding of what the petitioner was trying to say, and therefore that's the reason they addressed it as such? I think, yeah, one way to look at it is the board was simply saying even if your particular social group was limited to small business owners, it would fail there as well. We're fine treating the case either way, whether it's, I mean, I think strictly speaking according to the board, matter of WYC would have you analyze the case as presented to the immigration judge. That's our position. But it's also our position that a particular social group of simply small business owners generally would not suffice on immutability grounds. There's a case called Sanchez, which we cite in our brief. And there's one key passage from that case that I wanted to just make very clear here. It's a Sanchez case. It's 74, fed forth 1. It's a 2023 case. The passage I'm about to quote is from page 6, and the court held applying this test, the BIA concluded that being a business owner and being perceived wealthy are not immutable characteristics. And the court then goes on to agree with that. There's also the board's case in matter of Acosta. This is a case that goes back to 1985. It's not immutable in the sense that you can't change professions and do something else, but is it immutable in the sense that we're saying that they shouldn't be required to change their profession because it's so fundamental to who they are or to their consciousness? Correct, Your Honor. That's the way that the test has generally been formulated. So why isn't the second part applicable here? Well, I think the short answer to Your Honor's question is there's simply a lack of evidence. I think the case law reflects that typically courts have been very wary of treating any kind of profession, whether it's being in a small business, being in a large business, being a taxi driver, as was the case in Acosta. The court is reticent to treat those as immutable characteristics because generally one can change their profession. That's what the board noted in matter of Acosta. Is it possible that in some situations someone's career could be so fundamental to them that it would be unconscionable to change it? I don't want to rule that out, but that's a matter of evidence. For example, a matter of evidence, perhaps a country conditions report and an expert could convince the IJ or the board, correct? Yeah. Which is not present here. Correct. I think immutability, social distinction, all of these components of what makes a particular social group, they're evidentiary questions. This court has made that clear. And so, yes, in response to Your Honor's question, it's conceivable that evidence could be so overwhelming that in some cases some career could be potentially an immutable characteristic.  He's citing the administrative, the BIA MEVG case. But in the last paragraph, relying on that case, he notes that Guatemalan society certainly views business owners as a discrete group sufficient to meet the social distinction test. What would you say about that? I asked him and he said, I'm not sure, he's not aware of any constitutional guarantee or any other legal guarantee. But here he says Guatemalan society views us as that. Would this have required not only that statement by him in the brief, but perhaps country conditions report or some further evidence? Correct, Your Honor. I think that's what MEVG was. A blanket statement is not sufficient. You need more evidence. You need more evidence. I mean, just to be clear, that topic that what the MEVG statement that petitioner was relying on, his brief, went to the issue of social distinction, not immutability. But all of these components as part of a particular social group are things to be proven up with evidence. So what the board was noting in that passage that petitioner quotes in MEVG was that certainly it's conceivable that in some sense landowners might be, based on the evidence presented to an immigration judge, it might be conceivable to find that landowners are sufficiently distinct. I don't think the board weighed into whether land ownership was immutable, so that would be a separate issue that would also have to be addressed with evidence. But, yeah, I mean, for purposes of this case, the record is pretty sparse in terms of small business ownership, whether it's immutable, whether it's socially distinct. There's certainly nothing that would suggest that the particular definition of the particular social group that petitioners offered would be either immutable or socially distinct. We would point out that it's also not socially distinct under this court's case law because, as put to the immigration judge, the particular social group was circularly defined. It was effectively small business owners who had been persecuted in this particular neighborhood of Guatemala City. We recognize that the focus of the immigration judge and the board's decision was certainly on the particular social group, but I think it's important to note that the immigration judge also really made a finding as to no nexus. The immigration judge certainly didn't say explicitly, even if I found these particular social groups were cognizable, I would find no nexus. But I think one can infer that that's what the immigration judge is finding because the immigration judge basically characterized this as an unfortunate incident of extortion based on criminality, and there's certainly plenty of case law. That's typically the way that this court and the board have treated these instances, where you see more or less random extortion attempts. I mean, there's not a lot of country conditions evidence in the record, but what you do see is that extortion is common, and the reality is that it targets almost everyone. There's record evidence on 215 that notes targets, AR 215, which notes targets of extortion include not just small businesses but large businesses, people driving public transportation. So that's the issue of nexus. We would argue that the immigration judge made a nexus finding and actually that that nexus finding was not challenged and is therefore waived. But certainly if you look into what petitioners cited with their own testimony and what they presented as country conditions evidence, you don't see a lot of evidence that the criminal elements that were responsible for throwing this phone and extorting petitioners were doing so because of any particular social group or political opinion. My time is about to run out. Unless the court has any additional questions, we would submit the case on briefs and again ask that the court deny a petition. Okay. Thompson or Giuselle, any other further questions? I'm good. Okay. Thank you very much, counsel. And then Mr. Weber, you have two minutes for rebuttal, and please identify yourself for the record again. Robert Weber on behalf of the petitioners. Just to go back to the particular social group in this case, the government has stated that the Board of Immigration Appeals characterized the social group as small business owners in an even-if sense. Even if you were to boil it down to small business owners in Guatemala City, then you still don't carry the day. However, in the Board's decision, they don't say that. The Board says, moreover, the respondent proposed particular social group comprised of small business owners. That's what they say. They don't acknowledge that there was another proposed social group in the immigration court. They just characterize it as small business owners, and that's what they make their decision on. So, again, I just believe that the petitioners allowed to rely on that in the petition at this court. I would also point out that the Sixth Circuit in Zuniga-Martinez v. Garland, an unpublished decision that's cited in the petitioner's brief, the immigration judge in that case found that Honduran small business owners and female small business owners were two cognizable social groups proffered by the respondent in the immigration court petitioner in that case at the Sixth Circuit. I think that's important to note that the agency has, at the immigration court level, acknowledged that small business owners can be a cognizable social group, meaning that it is an immutable characteristic. And they've acknowledged that in a decision that they've made. The Sixth Circuit didn't reach that in their opinion because they had decided the case on other grounds that the immigration court denied the asylum applications on, but I think it's important to note that the agency has found the particular social group of small business owners to be a cognizable social group. What is your response to the nexus argument? Well, I think that, again, my response to the nexus argument is that the gang was not targeting Ms. Doniz-Hernandez because of her perceived wealth. There's no record evidence that Ms. Doniz-Hernandez was wealthy. There's no testimony in the hearing that there was any persecution based on her wealth. The government in their brief doesn't cite any evidence that states why the gang would be, why this case would be a perceived wealth case. So I do think that it was clear by the record that they were persecuting her based on her status as a small business owner, not based on wealth. And with that, I'll rest on my brief. Thank you. Any further questions from my colleagues? Okay, thank you very much. Thank you both for being here. That concludes argument in the brief.